King *v.* Klingensmith, Appellant.

Argued October 4, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Clyde P. Bailey,* with him *Harry K. McNamee* and *Weller, Wicks & Wallace,* for appellant.

*Louis Rosenberg,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, November 15, 1954:

The history of this litigation leaves much to be desired. It is concerned with the dissolution and the liquidation of the assets of a partnership which lasted only for a few months. The claims of creditors have all been satisfied and the only problem involved in the present controversy concerns the adjustment of the rights of the partners as among themselves. The sums in issue are comparatively modest. One would think, therefore, that a judicial disposition of the case could have been made within a reasonably short time, but in fact the litigation has now continued for more than seven years and the end is not yet. There has been a welter of petitions, answers, court orders and hearings, and to add to the unsatisfactory condition of the proceedings in this, the appellate court, is the fact that the record, as printed, is inadequate in that it omits much that would possibly have rendered a review of the case less difficult.

Stating merely the more important facts it appears that on March 27, 1947, the defendant, Walter T. Klingensmith, entered into a partnership with one Oscar P. Morrison. At that time the defendant, Morrison, and the plaintiff, Homer C. King, were district salesmen of the Panther Oil and Grease Manufacturing Company of Fort Worth, Texas. On June 17, 1947, defendant invited plaintiff to become a third member of his partnership with Morrison, plaintiff to pay a certain amount of capital into the partnership and to forego some commissions claimed by him to be due him. On June 19, 1947, all three of the parties had an attorney draw up a written agreement to establish such a tri-partite partnership to be known as "The Pressure Waterproofing Company" and to be for the conduct of "the art and trade of roof coating, painting and spraying." This agreement was not signed by plaintiff and defendant until July 22, 1947, and by

Morrison until August 8, 1947; on the latter date plaintiff paid into the partnership the capital sum agreed upon. The parties, however, had actually been operating under the partnership, and it has been the contention of plaintiff throughout the entire proceedings that it was understood and agreed that his association in the partnership was to be considered as having begun on March 27, 1947, when the defendant and Morrison first formed *their* partnership, that he had, in effect, bought into that partnership, and that he was therefore entitled to its profits and subject to its liabilities from that time. Defendant, on the other hand, has steadily maintained that not only was there no such understanding but that the agreement, although dated June 19, 1947, did not actually go into effect until August 8, 1947, when Morrison signed it and plaintiff contributed his capital.

The partnership quickly proved lacking in the harmony necessary for its successful operation. Defendant kept the books and was apparently the dominant member of the association. Plaintiff, as the result of suspicions followed by investigations and inquiries, came to the conclusion that defendant had improperly withheld moneys due the partnership, especially receipts from the Panther Oil and Grease Manufacturing Company with which the partnership had certain important business relations, and that he had also withdrawn moneys for which he was not accounting. Accordingly, on October 8, 1947, plaintiff filed a bill of complaint against defendant asking that a dissolution of the partnership be decreed, that a receiver be appointed, and that defendant be directed to account.[1]

---

[1] It would seem that in such a proceeding Morrison should certainly have been named as a party. However, he has not objected at any stage of the proceedings to the failure to make him a party nor has he attempted to intervene.

Defendant filed an answer joining in the prayer for a decree of dissolution but requesting that an account be rendered by plaintiff of all moneys due by him to the partnership. The court appointed a receiver and directed that defendant render an account. Defendant filed an account, which, however, on plaintiff's motion, was stricken from the record as being inadequate, whereupon it was agreed that plaintiff should state an account on the basis of the partnership books and records turned over to him by the receiver and a report submitted by the Panther Oil and Grease Manufacturing Company of refunds, payments, and goods made by it to the partnership. Plaintiff filed such an account which, in turn, was attacked by the defendant, who petitioned to strike it from the record and to reinstate his own account. He also filed exceptions to the account. Plaintiff moved to strike off the exceptions on the ground that they were vague and indefinite. Some three years later the court[2] entered an order dismissing defendant's petition to strike plaintiff's account from the record, granting plaintiff's petition to strike off defendant's exceptions to plaintiff's account, and, somewhat incongruously, at the same time dismissing those exceptions as though their merits had been passed upon; in this same order the court confirmed the account filed by plaintiff. Subsequently the court made distribution of the fund of $10,975.00 which had been turned over by the receiver to the court as the amount remaining in his hands after payment of all the creditors. In this distribution the court awarded to plaintiff the sum of $5,873.16 and to Morrison the sum of $4,793.90; it also ordered the entry of judgment in favor of plaintiff

---

[2] The proceedings all took place before the present judge of the court came into office in January of 1954.

against defendant for an additional sum of $4,102.18 and in favor of Morrison against defendant in an additional sum of $2,199.17. From its final order and judgments as thus stated defendant now appeals.

We agree with the contention of defendant that he has not had his full "day in court," although, as already stated, several years have been consumed there. Not only might something be said in favor of his exception to the form and generality of the account filed by plaintiff, but several of his exceptions specifically set forth definite amounts which he claims should have been credited to him and other amounts which he claims were improperly charged against him. In our opinion it was error for the court to have struck off his exceptions, and there should have been, and now ought to be, testimony taken to determine the extent of their merit in fact. The court, in its opinion, implies that defendant had the opportunity to take such testimony had he so desired, but this loses sight of the fact that as long as plaintiff's petition to strike off defendant's exceptions was pending defendant could scarcely have proceeded to the taking of testimony to justify those exceptions, and the court took no action on that petition until its final order, and in that order struck off the exceptions.

As previously stated, one of the main contentions between the parties was in regard to the time when plaintiff's interest in the partnership began. Both parties agree that the date affixed to the agreement, June 19, 1947, was not to be taken as that of the actual commencement of the partnership, plaintiff contending that he was to be considered a partner from March 27, defendant, on the other hand, that he became a partner only on August 8. There was considerable testimony taken on that question and the court held (16th, 17th and 19th findings of fact) that it was the under-

standing of all three partners that plaintiff's interest in the partnership, both as to profits and liabilities, should be regarded as having commenced at the time of the original inception of the partnership between defendant and Morrison. Morrison's testimony in regard to this controverted fact was so clear that we are convinced, both from it and the entire record as submitted to us, that the conclusion of the court was amply sustained by the evidence, and therefore this question has now been removed from the arena of further controversy between the parties.

There does not appear in the record any satisfactory explanation to justify the calculation in plaintiff's account that funds unaccounted for by defendant amounted to $16,325.28. That account represents merely the difference between the partnership's cash receipts and expenditures, but apparently does not take into consideration cash in bank, if any, or other assets of the partnership at the time of the appointment of the receiver. Moreover, the method of calculation by which the court fixed the distributive share of the partners in the fund and the amount of defendant's liability to plaintiff and to Morrison would seem wholly erroneous. However, the final determination of such shares and the amount of such liability must obviously await the determination of the merits of defendant's exceptions to plaintiff's account.

The record is remanded to the court below with direction to reinstate defendant's exceptions to plaintiff's account, with the right of defendant to present testimony in support of such exceptions; the court thereupon to pass upon the merit of such exceptions, and to make such final order of distribution of the fund in court, and fixing the rights and liabilities of the partners among themselves, as shall be just and proper. Costs to abide the event.

Mr. Justice JONES and Mr. Justice MUSMANNO dissent.